UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CRISTIN FAMULARO,** | Civ. No. 20-1655 (KM) |
| Plaintiff, | |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | |

**KEVIN MCNULTY, U.S.D.J.:**

    Claimant Christin Famularo appeals the final administrative decision of the Commissioner of Social Security denying her claim for disability insurance benefits. For the reasons provided herein, I will affirm the Commissioner's decision.

## I. Summary[1]

    On May 24, 2016, Famularo filed a Title II application for a period of disability and disability insurance benefits beginning October 15, 2015. (Tr.14). Her claim was denied initially on September 8, 2016, and then upon reconsideration on December 6, 2016. (*Id.*) Famularo then filed a request for a hearing, which was held on September 26, 2018. (*Id.*). At the hearing, both Famularo and Jackie Wilson, a vocational expert, testified. (*Id.*)

    Following that hearing, on December 27, 2018, Administrative Law Judge ("ALJ") Sharon Allard concluded that Famularo had not been under a

---

[1]     Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

    "DE" = Docket entry number in this case.

    "Tr." = Citations to the Administrative Record (DE 8)

1

disability within the meaning of the Social Security Act ("SSA") from October 15, 2015 through the date of the decision. (Tr.15). On January 16, 2020, the Appeals Council denied Famularo's request for review and the ALJ decision thereby became final. (Tr. 1). Famularo now appeals to this Court.

## II. Discussion

### a. Legal standard

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir.

1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

### b. ALJ Decision under review

Here, ALJ Allard made the following findings of fact and conclusions of law.

First, the ALJ found that Famularo met the insured status requirements of the SSA through September 30, 2020, and had not engaged in substantial gainful activity since October 15, 2015, the alleged onset date. (Tr.16–17)

Next, the ALJ found that Famularo has four severe medically determinable impairments that significantly limited the ability to perform basic work activities: complex regional pain syndrome secondary to multiple foot surgeries, arthropathies, osteoarthritis, and obesity. (*Id.*) Additionally, the ALJ found that Famularo has three non-medically determinable impairments: spine disorders, fibromyalgia, and mental impairments.

With respect to the spine, "an MRI of the lumbar spine taken on November 20, 2015 was normal" and "[a] physical exam of the lumbar spine in June 2016 was normal." (*Id.*).

As for the mental impairments, Famularo "had entirely normal mental exams," and "both agency medical consultants, Bernard Pierce, Ph.D., and Michael Cremerius, Ph.D., both opined in September and November 2016, respectively, that [Famularo] had no mental medically determinable impairments." (*Id.*). Both consultants reasoned that Famularo "had no

3

allegations of impairments that were mental in nature and no medical evidence of a mental impairment." (*Id.*)

Finally, regarding the fibromyalgia, the impairment is not medically determinable "because the components required by SSR 12-2p have not been met." (*Id.*) Specifically, there is not medical evidence that Famularo "had at least 11 positive tender points in any of her physical exams" and she "does not have repeated manifestations of fibromyalgia of six or more fibromyalgia symptoms, such as fatigue, cognitive or memory problems, waking up unrefreshed, depression anxiety, or irritable bowel syndrome." (*Id.*)

The ALJ then found that Famularo does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment:

> No treating or examining physician has indicated clinical signs or diagnostic findings that meet or are comparable to the severity requirements of a listed impairment. Specific consideration has been given to the applicable listings under section 1.00 *Musculoskeletal System* of the listed impairments. In addition, SSR 02-1p *Obesity* was adequately considered, both singularly and in combination with the claimant's underlying impairments.

(*Id.*)

Next, the ALJ determined that Famularo has the RFC to perform sedentary work as defined in 20 CFR § 404.1567(a).[2] (*Id.*) Specifically, Famularo can "lift and carry up to ten pounds occasionally and less than ten pounds frequently and stand/walk for two hours and sit for six hours in an

---

[2] The regulations define sedentary work as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

eight-hour workday." (*Id.*) Further, Famularo "can occasionally kneel, stoop, crouch, balance on wet, moving, or uneven surfaces, and climb stairs and ramps" and "can occasionally push and pull and operate foot controls with the right lower extremity and can frequently handle and finger, but cannot crawl or climb ladders, ropes, and scaffolds." (Tr, 17-18). Further, Famularo "must avoid hazards, including moving mechanical parts or at unprotected heights and must avoid vibrations." (Tr.18). Finally, Famularo "will be off task for 10% of the workday due to her physical impairments." (*Id.*)

In making that RFC determination, the ALJ first considered Famularo's self-reported symptoms. Famularo, "a 36-year-old woman, alleges disability based on complex regional pain syndrome involving the right foot" and reports "limitations in lifting, squatting, walking, sitting, stair climbing, bending, standing, kneeling, and concentration." (*Id.*) Further, she submits that "she cannot walk or sit for long periods without severe pain, needs to sit when showering, cannot stand for more than twenty minutes when preparing meals, and relies on help from her mother in cooking and cleaning." (*Id.*) Finally, Famularo stated that "she could walk, stand, or sit for no more than twenty minutes, was limited in carrying, and cannot attend as many social [activities] due to foot pain." (*Id.*)

The ALJ also considered Famularo's medical record. On June 7, 2012, Famularo "underwent an arthroplasty of the right second toe with insertion of an implant." (Tr.18). The implant was removed three months later "due to hammertoe and possible fracture of the implant." (*Id.*) Then, in April 2013, Famularo "received therapeutic injections into the right second web space neuroma and deep peroneal nerve." (*Id.*) Five months later Famularo "underwent a right second MTP arthroplasty and a right redo hammertoe Du Vries type arthroplasty and excision of a mass from the second right toe." (Tr.18-19).

In August 2014, Famularo "was treated for an infection in the right foot, which led to a diagnosis of cellulitis and abscess in the right foot." (Tr.19). She

was then treated with medication that improved her pain. (*Id.*). Famularo was also hospitalized from September 24 to September 30, 2014, "due to right foot cellulitis status post incision and drainage of the right first interspace infection." (*Id.*). A September 24, 2014 X-ray of the right foot "showed a status post prior resection of a second PIP implant and irregularity of the bone surface that was present, which may be chronic." (*Id.*). The following day, "an MRI of the right foot displayed a diffuse subcutaneous edema in the plantar aspect of the foot at a level of the second digit and bone marrow edema in the middle phalanx of the second digit." (*Id.*). Those MRI results demonstrated "a possibility of early osteomyelitis." (*Id.*). Famularo was then "treated with IV antibiotics and pain medication and she was discharged in stable condition." (*Id.*). Three months later, "an MRI of the right foot showed changes of the second proximal phalanx with sinus tract cellulitis and osteomyelitis." (*Id.*). The ALJ noted that "[t]here was probably avascular necrosis or sesamoiditis involving the fibular sesamoid." (*Id.*).

The ALJ also considered reports from examining physicians. Famularo saw Robert Silverman, M.D. five times between October 2015 and June 2016. (*Id.*). Those examinations "exhibited a full range of motion of the extremities with tenderness, erythema, and marked allodynia between the right great and second toe dorsum." (*Id.*) Famularo's neurological examinations were normal, "other than an antalgic gait on the right side." (*Id.*) Dr. Silverman "consistently diagnoses [Famularo] with complex regional pain syndrome that was stable," and "[b]y June 26, 2015, Dr. Silverman indicated that claimant's symptoms were well managed by the present regimen." (*Id.*).

On January 26, 2015, Gary Knackmuhs, M.D., conducted "an infectious disease evaluation" on Famularo. (*Id.*). That exam revealed "a large open wound between the great toe and second toe." (*Id.*). However, "there was no erythema." (*Id.*). Famularo's neurological exam demonstrated a "normal gait, power, tone, and sensation to light tough as well as intact cranial nerves." (*Id.*). Dr. Knackmuhs diagnosed Famularo "with osteomyelitis of the right second toe

and possible avascular necrosis or infection of the sesamoid bone." (*Id.*). A February 18, 2015 MRI of the right foot "showed extensive cellulitis surrounding the second toe, some phlegmon along the plantar-medial aspect of the proximal phalangeal remnants that may be present, and had exuberant marrow edema in the fibular sesamoid of the hallux." (*Id.*). Further, "osteomyelitis was a possibility given the proximity of the sesamoid to the cellulitic area." (*Id.*). However, "there was no compelling evidence for osteomyelitis involving the second digit." (*Id.*)

On September 14, 2015, Famularo was examined by John Nogueira, M.D. for right foot pain. (Tr.20). Famularo reported "that she had constant pain, swelling, and redness in the right foot, but admitted that Percocet helped the pain and that she recently returned to work." (*Id.*). The "physical examination was essentially normal, with 5/5 strength in the right leg, normal reflexes, and . . . ability to stand without difficulty." (*Id.*). However, Famularo "had an antalgic gait and severe allodynia dorsum of the right foot near D2," and "Dr. Nogueira diagnosed [her] with complex regional pain syndrome and gave her a prescription for aqua therapy and a sympathetic nerve clock." (*Id.*).

The ALJ noted that "two general medical reports were submitted by Joe Najjar, M.D. and Neal Yudkoff, DPM," but "neither doctor provided an opinion since they had not seen [Famularo] since prior to her alleged onset date." (*Id.*)

The ALJ also considered the examinations conducted by consultants at the request of the Social Security Administration. Marc Weber, M.D. examined Famularo on August 23, 2016. (*Id.*). Dr. Weber observed that Famularo "was in no acute distress, had 5/5 muscle strength in the upper and lower extremities, and 5/5 grip and pinch strength." (*Id.*). However, Famularo "had only trace movement in the right ankle dorsiflexion and plantar flexion as well as in the toe of the right foot." (*Id.*). A "sensory examination revealed dysesthesias as well as allodynia involving the right foot," however "[t]here was no edema or muscle atrophy noted, but deep tendon reflexes were not tested in the right foot." (*Id.*) Dr. Weber also observed that Famularo "had normal range of motion of the

7

cervical spine and upper extremities, deferred range of motion for the lumbar spine, and had 0-5 degrees dorsiflexion of the right ankle." (*Id.*) He diagnosed Famularo "with complex regional pain syndrome involving the right foot and a history of osteomyelitis involving the right foot." (*Id.*). Dr. Weber further opined that Famularo "could fully extend her hands, make fists, oppose fingers, separate papers, and lift a pin off the table, but could not stand on her heels and toes or perform a squat." (*Id.*). He added that Famularo "could ascend and descend the examination table independently, remove and put on her shoes, and her gait pattern was characterized by an inability to bring her right foot flat to the floor and ambulated on the lateral portion of her right foot with the use of a straight cane." (*Id.*).

On August 30, 2016, state agency medical consultant Jose Acuna, M.D., performed a physical RFC assessment. (*Id.*) He opined that Famularo "was limited to sedentary exertional work with a limitation in pushing and pulling using the right lower extremity." (*Id.*) Further, Famularo "could occasionally balance, kneel, crouch, crawl, and climb stairs and ramps, but could never climb ladders, ropes, or scaffolds." (*Id.*) Dr. Acuna also added that Famularo "had no manipulative, visual, or communicative restrictions, but must avoid even moderate exposure to vibration and hazard such as machinery and unprotected heights." (*Id.*). On November 23, 2016, Dr. Acuna's findings were affirmed on reconsideration by state agency medical consultant Joseph Udomsaph, M.D. (*Id.*).

On August 1, 2017, Steven Lomazow, M.D. examined Famularo to evaluate her complex regional pain syndrome. (*Id.*). Dr. Lomazow noted that Famularo "had trouble with her right foot since 2006 and subsequently had 15 surgeries, including a failed implant in 2012 and a 2014 hospitalization for a staph infection." (*Id.*) He further noted that Famularo "was obese, both of her legs appeared somewhat swollen, and [there was] potential hyperesthesia of the second toe of the right foot." (Tr.20-21). However, the "motor examination showed no evidence of any specific loss of bulk, tone, or strength and a gait

8

examination indicated no evidence of retropulsion or propulsion." (Tr.21). Further, Famularo's "mental status exam was entirely normal." (*Id.*) Dr. Lomazow concluded that Famularo "had some sort of neuropathic pain syndrome and said there was nothing he could do since he did not treat patients with chronic pain, but [he] prescribed Percocet for one month." (*Id.*). Dr. Lomazow further concluded that Famularo "was totally disabled because of her foot and complex regional pain syndrome." (*Id.*).

From October 2017 through September 2018, Nilay Shah, M.D., examined Famularo five times. (*Id.*). Those examinations demonstrated that Famularo "was obese with a body mass index of 35.7, but had 5/5 strength in all four extremities with some giveaway due to pain, no tremors, and intact sensation to pinprick except to the right foot," and that "the right foot had hyperesthesia to light touch and her gait was normal based, but antalgic." (*Id.*). Dr. Shah diagnosed Famularo "with complex regional pain syndrome of the right foot, but feared in September 2018 that it spread to all four limbs." (*Id.*). Dr. Shah "recommended continued medication management to treat the pain." (*Id.*).

Finally, the ALJ considered the examinations by Henry Sardar, DO, who treated Famularo primarily for right foot pain between September 2016 and October 2018. (*Id.*). Those examinations "repeatedly reflected" that Famularo had "a slow gait, mild difficulty standing on her heels and toes, good balance, and was able to ambulate independently without the use of any assistive devices." (*Id.*) However, the examinations also revealed that Famularo had "a decreased range of motion in plantar flexion and dorsiflexion of the right foot with mild swelling with pressure points palpated at the bottom of the right foot." (*Id.*) Further, "[t]he right foot displayed significant tenderness, tissue texture changes, positive joint laxity, and diminished vascular pulses." (*Id.*). Famularo was "consistently diagnosed" with "right foot pain and complex regional pain syndrome." (*Id.*). By October 2018, Famularo "had 70% pain relief and overall improvement from her pain." (*Id.*)

After consideration of the record, the ALJ concluded that Famularo's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.*) However, the ALJ found that Famularo's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*). The ALJ then determined that Famularo has the RFC to perform sedentary work. (Tr.17, 20).

The ALJ premised her RFC determination upon the following. First, Famularo "has received treatment for her impairment(s)[and] that treatment has been essentially routine and/or conservative in nature." (*Id.*). Secondly, The ALJ reasoned that the medical evidence of record supports Famularo's ability to perform sedentary work:

> The objective physical findings are fairly routine and do not show that the claimant was debilitated to the point of being disabled. Also, despite repeated observation of an antalgic gait, the medical evidence repeatedly demonstrated the claimant's ability to ambulate independently. She had pain relief and improvement in her activities of daily living with medication management.

(Tr.21-22).

Third, regarding the opinion evidence, the ALJ gave "considerable weight" to "Dr. Acuna and Dr. Udomsaph because both doctors accurately found [Famularo] was not disabled and remained capable of performing sedentary work." (Tr.22). Although the ALJ found that Famularo "has more functional restrictions than opined by Dr. Acuna and Dr. Udomsaph," the "opinions of both doctors generally support[] the overall finding that [Famularo] has physical limitations that does not preclude all work activities." (*Id.*).

The ALJ gave "some weight to Dr. Weber with greater weight being given to the fact that he was able to personally examine [Famularo] and observed some functional limitations." (*Id.*) However, the ALJ found that "Dr. Weber's opinion is undermined by the fact [that] he did not administer a comprehensive functional assessment" to examine Famularo's "ability to sit, stand, walk, lift, carry, push and pull." (*Id.*).

10

Little weight was given to both Dr. Lomazow and Dr Shah. (*Id.*). With respect to the former, the ALJ noted that "he examined [Famularo] just once, did not treat patients with chronic pain, and opined that [she] was totally disabled, which is an opinion reserved for the Commissioner." (*Id.*). Further, the ALJ found that Dr. Lomazow's "is not consistent with the medical evidence of record that shows despite chronic foot pain, the claimant retained the capability to perform sedentary work." (*Id.*)

Regarding Dr. Shah, the ALJ found that "his opinion is vague, broad, and is contradicted by his own treatment notes seen in Exhibits 19F and 20F as well as the other medical evidence of record." (*Id.*) In particular, his medical exams demonstrated that Famularo's "physical issues were confined to the right foot," but he nevertheless suggested that Famularo is incapable "of doing any sort of physical activity on a regular basis." (*Id.*) The ALJ noted that "despite right foot pain, the medical evidence is clear in establishing that it does not preclude the claimant for all work activities." (*Id.*)

After determining Famularo's RFC, the ALJ found that she is unable to perform any past relevant work as a pediatric nurse, pediatric nurse practitioner, advanced practice nurse, and nursing instructor because Famularo "is limited to no more than sedentary exertional work." (Tr.22-23). Because Famularo was thirty-three years old at the time of the alleged onset date, she is considered a "younger individual." (Tr.23). Famularo has at least a high school education and is able to communicate in English. (*Id.*) The ALJ further found that transferability of job skills is not material. (*Id.*).

Finally, the ALJ found that, considering Famularo's, age, education, work experience, and RFC, there are job that exist in significant numbers in the national economy that Famularo can perform. (*Id.*). The ALJ noted that the vocational expert testified that, given those factors, Famularo "would be able to perform the requirements of representative occupations such as table worker (DOT 739.687-183), which has 508,000 jobs nationally; document preparer (DOT 249.587-018), which has two million nationally; and as a order clerk

(DOT 209.567-014), which has 185,000 jobs nationally." (Tr.24). All of those occupations "require sedentary physical exertion and are unskilled with an SVP of two." (*Id.*). The ALJ found the vocational expert's testimony consisted with the Dictionary of Occupational Titles." (*Id.*)

In sum, based on the vocational expert's testimony, and considering Famularo's age, education, work experience, and RFC, the ALJ determined that Famularo "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.*). Therefore, the ALJ entered a finding of not disabled. (*Id.*)

### c. Claimant's Appeal

Famularo asserts that the Commissioner's final decision is not based on substantial evidence and is flawed as a matter of law. (DE 11 at 1). Famularo presents four bases upon which the final agency decision should reversed. I will address each in turn.

### 1. Discounting and ignoring relevant evidence of disability

First, Famularo submits that the ALJ committed legal error by discounting and ignoring probative evidence of disability without good reason. (DE 11 at 7).

An "ALJ cannot reject evidence for no reason or for the wrong reason." *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). Therefore, the ALJ must explain "the reason why probative evidence has been rejected . . . so that a reviewing court can determine whether the reasons for rejection were improper. *Id.* at 707. Additionally, "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)); *see also Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986) (noting that where "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ must make clear on

the record his reasons for rejecting the opinion of the treating physician."). Further, an "ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled." *Morales*, 225 F.3d at 317. An ALJ may reject outright such treating physician's determination "'only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Id.* (quoting *Plummer*, 186 F.3d at 429).

Here, Famularo submits that all of the treating doctors agree that she has significant pain, significant limitation of function, and is unable to work. (DE 11 at 8). Famularo points to the opinion of Dr. Lomazow that she is "totally disabled." (*Id.*). She further cites to Dr. Shah's treatment notes. (*Id.*). In those notes, Dr. Shah transcribed Famularo's self-reporting that "her hands are numb and weak" and that Famularo cannot "hold onto things without dropping them." (Tr.363). Famularo also highlights her own testimony that her hands hurt as much as her feet (Tr.59); that her hands are numb which causes her to lose grip of items in her grasp (Tr.75); and that her pain is so severe it impacts her ability to concentrate (Tr. 75).

The Commissioner contends that the ALJ thoroughly discussed Famularo's medical record and weighed all medical opinions with supporting rationale. (DE 17 at 11-12). I agree. With respect to Dr. Lomazow's opinion that Famularo is totally disabled, the ALJ properly gave it little weight because the ultimate disability determination is an administrative rather than medical finding. 20 C.F.R. § 404.1527 (noting that some opinions are not medical opinions, and that the Commissioner is "responsible for making the determination or decision about whether [a claimant] meets the statutory definition of disability."); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). Secondly, the ALJ noted that Dr. Lomazow examined Famularo "just once" and "did not treat patients with chronic pain." (Tr.22). Thus, his opinion does not "reflect expert judgment based on a continuing observation of the patient's

condition over a prolonged period of time." *See Morales*, 225 F.3d at 317 (internal quotation marks omitted) (quoting *Plummer*, 186 F.3d at 429).

Finally, the ALJ found that Dr. Lomazow's opinion was inconsistent with the medical evidence of record. (Tr.22) For example, after Famularo visited the emergency room in September 2014, she was discharged in stable condition. (Tr.277). In September 2015, Famularo went to Hackensack Neurology Group due to pain in her foot. (Tr.293). After examining Famularo, Dr. Nogueira indicated that she appeared "well-nourished, *in no acute distress*, *general level of motor activity normal*, cooperative during history and examination." (Tr.294 (emphasis added)). Dr. Nogueira diagnosed Famularo with complex regional pain syndrome and plotted a course of treatment that included aqua therapy and a sympathetic nerve block. (Tr.295). June 2016 notes from Dr. Silverman, who examined Famularo a number of times, noted that Famularo's severe and chronic pain related to complex regional pain syndrome was "*mild to moderate* and *very well managed* on a regimen that includes physical therapy and oxycodone 10, when necessary." (Tr.298 (emphasis added)). Further, Dr. Silverman stated that Famularo "finds this medication very helpful," and that the medication "allows her to take care of her ADLs and manage her own affairs." (*Id.*). And, he noted that Famularo "finds her *overall quality of life improved on these medications*." (*Id.*).

With respect to Dr. Shah's treatment records, a claimant's own subjective report about her symptoms, does not become a medical opinion by virtue of being recorded in treatment notes. *Morris v. Barnhart*, 78 F. App'x 820, 824 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir.1996)). Moreover, in contrast to Famularo's report that her hands were weak and numb, Dr. Shah opined that Famularo had full strength and intact sensation in her upper extremities. (Tr. 358-64). Further, on each visit from October 2017

14

to May 2018, Dr. Shah indicated that Famularo appeared comfortable and was not in acute distress. (*Id.*).

Based on the foregoing, I find that the ALJ appropriately considered and weighed the medical evidence.

## 2. Rejecting medical opinions regarding the nature and severity of claimant's impairments based on lay interpretation of medical evidence

Next, Famularo submits that the ALJ improperly substituted her lay opinion for the medical opinions regarding the nature and severity of her impairments.

An ALJ's RFC determination must be based on the medical evidence of record. 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."). Further, the ALJ must "provide a 'clear and satisfactory explication' of the basis on which [her] determination rests." *Mays v. Barnhart*, 78 F. App'x 808, 812 (3d Cir. 2003) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981)).

Famularo relies on *Doak v. Heckler*, 790 F.2d 26 (3d Cir. 1986) for the proposition that an ALJ "cannot use the record evidence to arrive at his own conclusion regarding [a claimant's] physical capabilities, particularly in the face of a contrary opinion reached by a treating medical doctor." (DE 11 at 8). In *Doak*, the ALJ determined that the claimant could perform light work, which is more strenuous than sedentary work. 790 F. 2d at 29. The United States Court of Appeals for the Third Circuit held that the record did not support such a finding. *Id.* The Court reasoned that the ALJ's opinion failed to correspond to the medical evidence:

> One physician believes Doak is totally disabled, another said he could do sedentary work, and a third made no conclusion about ability to work but stated that the claimant "was only able to exercise to a total of 4 METs of activity reaching a heart rate of 133 at which time he was extremely short of breath and [it] was indeed noticed that the wheezing was much worse." No physician suggested that the activity Doak could perform was consistent with the definition

15

> of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence.

*Id.* (alteration in original) (internal citations omitted). More recently, however, the Third Circuit explained that while the ALJ's decision must be based on the medical evidence, "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011); *see also Mays*, 78 F. App'x at 813 ("[T]he ALJ is responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion.") (citing 20 C.F.R. §§ 404.1527(e), 404.1546(c)).

Here, I find the ALJ's RFC determination that Famularo is capable of performing sedentary work is supported by substantial evidence. The ALJ, while "sympathetic to [Famularo's] long term history of surgical procedures and pain management," noted that Famularo's treatment courses have been "essentially routine and/or conservative in nature"; "the medical evidence repeatedly demonstrated [Famularo's] ability to ambulate independently" despite having an antalgic gait; and Famularo's pain and daily activities improved with treatment. (Tr.20-21). Further, the ALJ gave considerable weight to Dr. Acuna's and Dr. Udomsaph's opinions that Famularo could perform sedentary work. (Tr.22). Finally, as explained *supra*, Section II.c.1., the ALJ properly considered and weighed all of the medical evidence in the record.

This was not mere lay opinion, but an RFC determination based on the ALJ's thorough discussion of the medical evidence. Instead, it is substantially supported by the record.

### 3. Failing to perform the required analysis under SSR 02-1

Famularo submits that the ALJ failed to consider her obesity as required by Social Security Ruling 02-1. (DE 11 at 10).

Ruling 02-1 provides that obesity can cause a limitation of function. Titles II & Xvi: Evaluation of Obesity, SSR 02-1P (S.S.A. Sept. 12, 2002). The ruling further provides that an assessment should be "made of the effect obesity has upon the individual's ability to perform routine movement and

16

necessary physical activity within the work environment." *Id.* Here, the ALJ noted that Famularo's obesity was considered in connection with the listing analysis. (Tr.17). And, in making her RFC determination, the ALJ relied in part on the analyses of Drs. Acuna and Udomsaph, who both considered Famularo's obesity in their assessments. (Tr.92-93; Tr.106-07). Further, the ALJ recognized that Famularo's obesity constitutes a severe impairment. After acknowledging Famularo's obesity and crediting the determinations of Drs. Acuna and Udomsaph, the ALJ entered her RFC determination of sedentary work. (Tr.17-22).

In her briefing, Famularo recites Ruling 02-1 almost in its entirety, and then states: "There is none of the analysis that is required by the ruling above. None. Zip. Zero. Just a bald empty statement that the ruling existed. It is respectfully submitted to the Court that this complete failure to do the required analysis requires a remand." (DE 11 at 16). However, Famularo does not even attempt to demonstrate how her obesity imposes limitations beyond those captured by the ALJ's RFC determination. "[T]he burden of showing an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 US 396, 409 (2009). Thus, to warrant remand, Famularo would have to explain how her "obesity impacts h[er] functioning or ability to work" or identify "medical evidence of the same." *Cosme v. Comm'r of Soc. Sec.*, No. 18-CV-01327, 2020 WL 2079284, at *4 (D.N.J. Apr. 30, 2020). Because that was not done here, and no basis for such a conclusion is suggested by the record, remand is not warranted.

**4. Discrediting hypothetical question posed to vocation expert**

Finally, Famularo submits that, based on a proper hypothetical question, the vocational expert's opinion would indicate that there was no work in the national economy that she could perform. (DE 11 at 16-17).

Vocational experts are usually asked hypothetical questions to aid the ALJ in making an RFC determination. *Rutherford v. Barnhart*, 399 F.3d 546,

17

553 (3d Cir. 2005). The proper use of such questions was explained by the Third Circuit in *Podedworny v. Harris*:

> Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert. The ALJ will normally ask the expert whether, given certain assumptions about the claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy. *While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments.* Thus the expert must have evaluated claimant's particular impairments as contained in the record.

745 F.2d 210, 218 (3d Cir. 1984) (internal citations omitted) (emphasis added).

Here, Famularo points to the following exchange between the ALJ and the expert:

> Q    If we said that the individual could engage in occasional handling and fingering, would the jobs that you've given us remain?
>
> A    No.
>
> Q    However, would there be any other positions classified in the national economy that an individual so described could perform?
>
> A    No, your honor.

(Tr.79). Famularo ignores, however, the preceding question:

> Q    If we were to say that the individual *can* engage in frequent handling and fingering, would the jobs that you've given us remain?
>
> A    Yes.

(*Id.*) (emphasis added).

18

As explained in *Podedworny*, the ALJ can pose multiple questions, but it is only those hypothetical questions that accurately reflect the claimant's symptoms that can be used in making the RFC determination. 745 F.2d at 218. Stated differently, for the answer to constitute substantial evidence, the hypothetical question must accurately reflect the claimant's impairments. *Id.*; *see also Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence.").

Here, the ALJ *rejected* Famularo's assertion that she could not make frequent movements with her hands. (Tr.21 ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."). Indeed, an August 2016 orthopedic consultative examination report by Dr. Weber indicates that Famularo had full muscle strength in her upper extremities and full grip and pinch strength. (Tr. 341). Further, the report states that Famularo "is able to fully extend her hands, make fists and oppose her fingers." (*Id.*). And, that she "is able to separate papers as well as lift a pin off the table." (*Id.*). Additionally, Dr. Shah repeatedly opined that Famularo maintains full muscle strength in her arms. (Tr. 358-64). After those examinations, Dr. Shah also stated that he did not notice any tremors. (*Id.*)

As a result, the relevant hypothetical question was the one in which the claimant was assumed to be capable of "frequent handling and fingering." On that assumption, which was supported by substantial evidence, there did exist relevant jobs in the national economy.

As explained in the previous section, substantial evidence supports the ALJ's RFC determination that Famularo can perform sedentary work. The isolated hypothetical question that Famularo relies on, which does not accurately reflect her symptoms, does not undermine that determination.

### III. Conclusion

For the reasons set forth above, the Commissioner's decision is AFFIRMED. An appropriate order follows.

Dated: February 17, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty
United States District Judge**